UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| R. PEACHER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:21-cv-02361-JMS-TAB |
| | ) | |
| D. REAGLE, et al. | ) | |
| | ) | |
| Defendants. | ) | |

**Order Granting Defendants' Motion for Summary Judgment,
Denying Plaintiff's Motions for Sanctions, and Directing Final Judgment**

Plaintiff Robert Peacher, an inmate at Pendleton Correctional Facility, is proceeding in this 42 U.S.C. § 1983 action on claims that the defendants were deliberately indifferent to his health and safety in violation of the Eighth Amendment. The defendants have moved for summary judgment on the basis that Mr. Peacher failed to exhaust available administrative remedies before filing suit. Mr. Peacher has filed two motions for sanctions based on the defendants' litigation of the exhaustion defense. For the reasons below, Mr. Peacher's motions for sanctions are **denied**, the defendants' motion for summary judgment is **granted**, and final judgment shall enter.

### I. Applicable Legal Standards

#### A. Summary Judgment

A motion for summary judgment asks the Court to find that there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party can also support a fact by showing

that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B).

The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Skiba v. Illinois Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018).

### B.     Exhaustion

"No action shall be brought with respect to prison conditions under section 1983 . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e; *see Porter v. Nussle*, 534 U.S. 516, 524-25 (2002). "[This] exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter*, 534 U.S. at 532 (citation omitted). "To exhaust available remedies, a prisoner must comply strictly with the prison's administrative rules by filing grievances and appeals as the rules dictate." *Reid v. Balota*, 962 F.3d 325, 329 (7th Cir. 2020). Because exhaustion is an affirmative defense, the Department of Correction must show that administrative remedies were available and that the plaintiff failed to use them. *Id.*

## II.     Evidence Before the Court

### A.     Mr. Peacher's Allegations

In his complaint as it now proceeds, Mr. Peacher alleges that (1) defendants Lieutenant Jackson, Sergeant Marados, and Sergeant Williams refused to comply with a medical order regarding his food delivery; (2) Lieutenant Jackson and Sergeant Williams refused to provide Mr. Peacher with a fan or his inhaler when Mr. Peacher was housed in a hot prison cell; and (3) Lieutenant Jackson failed to enforce prison mask policies, thereby placing Mr. Peacher at a

heightened risk of contracting Covid-19. *See* dkt. 7 (screening order); dkt. 22 (order granting plaintiff's motion to sever).

### B. The Prison Grievance Process

There was a prisoner grievance process in place at Pendleton at all relevant times for this case. *See generally* dkt. 51-2. Matters appropriate to the grievance process include "staff treatment, medical or mental health, . . . and food service," as well as "[a]ctions of individual staff." *Id.* at 3. Matters inappropriate to the grievance process include "Tort Claims seeking monetary compensation," as well as "[s]taff discipline, staff assignment, staff duties, and/or staff training." *Id.* at 4.

To complete the grievance process, an inmate must present his grievance through three levels of review: a formal grievance, an appeal to the warden, and an appeal to the department grievance manager. Dkt. 51-2 at 3. Each grievance is subject to a number of requirements, including that "[i]t shall relate to only one event or issue." *Id.* at 9. The grievance specialist may reject and return a grievance for violation of this requirement. *Id.* at 10. Alternatively, the grievance specialist "has the discretion to consider a grievance that does not conform to the rules if there is good cause for the violation." *Id.* The grievance specialist may not reject a grievance merely "because an offender seeks an improper or unavailable remedy except that a grievance shall be rejected if the offender seeks a remedy to a matter that is inappropriate to the offender grievance process." *Id.* at 7.

Once a grievance is filed, the grievance specialist has 10 days to either reject it and return it to the inmate or accept it and record it as filed. Dkt. 51-2 at 10. If the grievance is accepted and recorded, the grievance specialist then has another 15 days to investigate and respond. *Id.* After an unsatisfactory response—or after 20 days with no response—the inmate may appeal. *Id.* at 12−13.

The warden or a designee must respond within 10 days of the appeal. *Id.* at 13. If the inmate is still not satisfied with the response (or lack thereof), then the inmate may appeal to the department grievance manager, who will have 10 days to respond. *Id.*

If an inmate files an emergency grievance—"a grievance that, if subjected to the normal time limits, could cause the grievant substantial risk of personal injury or irreparable harm"—then an accelerated timeline applies:

> The Offender Grievance Specialist shall immediately bring an emergency grievance to the attention of the Warden / designee for review and response within one (1) business day of recording the emergency grievance. The action on any emergency grievance may be appealed by the offender within one (1) business day of receiving the response. Upon the receipt of the appeal, the Offender Grievance Specialist shall notify, via email, the Department Offender Grievance Manager that the appeal has been submitted. The Department Offender Grievance Manager shall issue a final Department decision within five (5) business days of the offender filing the grievance.

Dkt. 51-2 at 5.

### C. Mr. Peacher's Use of the Grievance Process

Mr. Peacher asserts that he submitted three emergency grievances on August 23, 2021. Dkt. 56 at 2, ¶ 7; *see also* dkt. 51-5; dkt. 51-7; dkt. 58-1. Two of those grievances—the "housing assignment grievance" and the "food selection grievance"—include issues that are proceeding in this case. The "religious objects" grievance includes issues that are being litigated in another action.

#### 1. The Housing Assignment Grievance

In the housing assignment grievance, Mr. Peacher asserted, "My housing assignment is violating my constitutional rights of cruel and unusual punishment." Dkt. 55-1 at 8. He then provided a list of complaints:

- "There is excessive and extreme heat with no circulation of air."
- "I am not provided a fan."

4

- "I also am not provided my inhalers in these living conditions and I am an asthmatic."

- "I'm also not provided my medication for my asthma or other medical issues."

- "[T]he showers are not clean."

- "[T]he cell is not clean."

- "COVID is still prevalent and staff are not wearing masks."

- "I'm not being given rec time at all . . ."

- ". . . nor my legal work causing me to miss deadlines and prepare for trial."

*Id.*

Grievance specialist Christina Conyers returned the housing assignment grievance to Mr. Peacher on September 7, 2021. Dkt. 55-1 at 9. As the reason for the return, she checked a box marked "Other" and explained, "Your complaint or concern contains multiple issues[;] separate the issues and submit a separate form for each one you wish to grieve." *Id.* But by the time Mr. Peacher received the grievance return, he had already submitted two levels of appeals and then filed this action. *See id.* at 13 (facility-level appeal submitted August 26; department-level appeal submitted August 31, 2021); dkt. 2 (complaint filed August 31, 2021).

### 2. The Food Service Grievance

In the food service grievance, Mr. Peacher asserted, "I have a medical order from Dr. Lamar regarding my food. Sgt. Morados intended to follow my medical orders and was instructed/ordered by Lt. Jackson to not follow my medical food order so I literally am being starved to death by Lt. Jackson." Dkt. 55-1 at 10. As relief, Mr. Peacher sought "My medical order to be followed immediately," "Lt. Jackson demoted and reprimanded," and $20,000. *Id.* In other filings, Mr. Peacher has elaborated that the medical order at issue allows him to select his own

meal tray instead of having an officer select the meal tray and give it to him. *See* dkt. 35, ¶ 8 (renewed motion for preliminary injunction).

Ms. Conyers rejected and returned this grievance, but the parties dispute when and for what reasons. The defendants provide evidence that Ms. Conyers returned the grievance on September 14, 2021. Dkt. 51-7 at 1 (grievance return form); dkt. 51-1, ¶ 29 (Conyers declaration). The September 14 grievance return listed several reasons, including (1) "This issue has since been addressed and staff now know about the medical orders"; (2) "Staff discipline, assignment, duties and/or training are not part of the grievance process"; and (3) "Monetary compensation is not available or an appropriate remedy within the grievance process." Dkt. 51-7 at 1.

Mr. Peacher insists that the September 14 grievance return "is a fake." Dkt. 55-1 at 5, ¶ 21. He testifies that the food service grievance was returned on September 7. *Id.* The return form he points to offers only one reason for rejection: "Monetary compensation is not available or an appropriate remedy within the grievance process." *Id.* at 11.

The defendants counter that Mr. Peacher has mixed and matched his grievances with different grievance returns. Dkt. 58 at 4−5. They explain that Mr. Peacher's religious objects grievance, not his food service grievance, was returned solely because monetary compensation is not an inappropriate remedy. *Id.* Notably, the religious objects grievance sought a remedy of return of the religious objects, plus "$5000 per day ($1000 per prayer time) I'm being forced to violate my constitutional right to my freedom." Dkt. 58-1.

In any event, by the time Mr. Peacher received the grievance return, he had already submitted two levels of appeals and then filed this action. *See id.* at 14 (facility-level appeal submitted August 25; department-level appeal submitted August 30, 2021); dkt. 2 (complaint filed August 31, 2021).

6

### III. Discussion

Mr. Peacher asserts that he exhausted his fan-and-inhaler claim as well as his claim based on failure to follow Covid masking policy within the housing assignment grievance and related appeals. He asserts that he exhausted his claim alleging failure to follow a medical order regarding food delivery in his food service grievance.

The defendants argue that Mr. Peacher failed to exhaust his available administrative remedies for two reasons. *First*, he never filed a proper grievance regarding any of his claims before filing suit. *Second*, even if he did file a proper grievance, he dashed to bring suit before properly completing the grievance appeal process.

The Court agrees that the housing assignment grievance did not comply with the grievance policy. And the Court agrees that Mr. Peacher failed to allow the grievance process to fully run its course before filing suit. The Court therefore need not decide whether the food selection grievance complied with the grievance policy.

#### A. The Housing Assignment Grievance Attempted to Grieve Multiple Issues

The grievance policy provides that each grievance "shall relate to only one event or issue." Dkt. 51-2 at 9. The grievance specialist may reject any grievance that does not comply with this requirement. *Id.* at 10. Alternatively, the grievance specialist "has the discretion to consider a grievance that does not conform to the rules if there is good cause for the violation." *Id.*

Mr. Peacher's housing assignment grievance relates to more than one event or issue: the temperature in his cell; the deprivation of medicine and an inhaler; a dirty shower; a dirty cell; staff not wearing masks; lack of recreation time; and lack of access to legal paperwork. Dkt. 51-5 at 2. Perhaps some of these issues are sufficiently related to be properly joined in a single grievance, but not all of them.

Mr. Peacher asserts that this grievance "grieved only one issue: extreme housing conditions." Dkt. 56 at 10. He explains that the cell temperature, deprivation of an inhaler and medicine, dirty shower, staff not wearing masks, lack of recreation time, and lack of access to legal paperwork were all just *examples* of the extreme housing conditions. *Id.* But this proves too much: by Mr. Peacher's reasoning, nearly every grievance would relate to only one event or issue: the inmate's dissatisfaction with prison life. The Court would not let Mr. Peacher litigate multiple unrelated civil rights claim in a single case under that reasoning. *See* dkt. 7 at 4−5 (screening out improperly joined claims). Nor will the Court force the prison grievance staff to address multiple unrelated issues in a single grievance based on the same reasoning.

Given his failure to grieve them separately, Mr. Peacher failed to exhaust his fan-and-inhaler claim and his claim based on failure to follow Covid masking policy.

### B. Mr. Peacher Brought Suit Before Completing the Grievance Process as to Any Claim

Mr. Peacher treated the grievance process as a timed obstacle course with the door to the federal courthouse as the finish line. He did so contrary to the purpose of the exhaustion requirement, which is "to alert the state to the problem and invite corrective action." *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013) (cleaned up). And he did so contrary to Seventh Circuit law, which provides that an inmate must "stick with [the] process until its conclusion" and not "make a beeline for court" without giving the relevant decisionmakers a meaningful chance to take action. *Ford v. Johnson*, 362 F.3d 395, 400 (7th Cir. 2004).

Mr. Peacher testifies that he submitted his food service and housing assignment grievances on Monday, August 23, 2021, by giving them to his therapist. Dkt. 55-1 at 3, ¶ 11; *see* dkt. 56 at 2, ¶ 7. When he did not receive any response, he appealed his food service grievance on Wednesday, August 25, and his housing assignment grievance (including his related fan and mask

grievances) on Thursday, August 26, both "via the case worker." Dkt. 55-1 at 4, ¶ 16.[1] When he did not receive responses to those, he submitted his final appeal of the food service grievance on Monday August 30, and his final appeal of the housing assignment grievance on Tuesday August 31 "by having them placed in the case worker's inbox." *Id.*, ¶ 17. Also on August 31, Mr. Peacher filed this suit. Dkt. 2.

To be sure, the grievance policy provides an accelerated timeline for emergency grievances.[2] Dkt. 51-2 at 5. But it does not create a special deadline for every step of the process—only some. For example, the very first step in the grievance process is for the grievance specialist to decide whether to accept and record the grievance or to reject and return it. *Id.* at 10. The usual time to take such action is 10 business days, and the emergency grievance provision does not create an alternative deadline. *Id.* at 5, 10. Assuming the ordinary deadline applies, Mr. Peacher brought suit even before the grievance specialist was required to decide whether to return his grievances or accept and record them.

Absent any provision to the contrary, Mr. Peacher should have assumed that the ordinary deadline applied. *See Ross*, 578 U.S. at 644 ("When an administrative process is susceptible of multiple reasonable interpretations, Congress has determined that the inmate should err on the side of exhaustion."). He did quite the opposite, assuming that each relevant decisionmaker had only one day to complete each step in the process and skipping straight to the next step each time he did not receive a response after one or two business days.

---

[1] Ms. Conyers testifies that the grievance office has no record of receiving any appeal of Mr. Peacher's housing assignment grievance or his food service grievance. Dkt. 51-1, ¶ 33. For summary judgment purposes, the Court credits Mr. Peacher's testimony regarding these filings. Dkt. 55-1 at 4, ¶¶ 16−17.
[2] The defendants do not dispute for purposes of summary judgment that Mr. Peacher's complaints—at least the ones that were appropriate for the grievance process—qualified for the emergency grievance track. The Court therefore makes no finding on this question.

There is one provision in the grievance policy, which, if read without any context, almost justifies Mr. Peacher's actions. For emergency grievances, "The Department Offender Grievance Manager shall issue a final Department decision within five (5) business days of the offender filing the grievance." Dkt. 51-2 at 5. Mr. Peacher testifies that he submitted his grievances on Monday, August 23, 2021. If everything went according to schedule, then the final decision should have been issued five business days later on Monday, August 30. Mr. Peacher filed suit the next day. Everything else aside, that would have been premature. *See Mlaska v. Shah*, 428 F. App'x 642, 645 (7th Cir. 2011) ("Even though the warden was required to respond within two months, a prisoner litigant cannot 'make a beeline for court' the moment this deadline passes." (quoting *Ford*, 362 F.3d at 400)).

But everything else is not aside. Mr. Peacher did not even submit his department-level grievance appeals until August 30 and 31, "by having them placed in the case worker's inbox." Dkt. 55-1 at 4, ¶ 17. He therefore could not reasonably expect to receive responses before filing suit on August 31.

So, even construing every ambiguity in the grievance policy to Mr. Peacher's favor—which is far more generous than the actual standard, *see Ross*, 578 U.S. at 644 (grievance process unavailable based on ambiguity only when the "rules are so confusing that no reasonable prisoner can use them" (cleaned up))—Mr. Peacher still did not exhaust available administrative remedies before filing suit.

It does not matter for purposes of this case whether, as Mr. Peacher alleges, "Ms. Conyers does not follow the policy when I try to use the grievance process." Dkt. 55-1 at 3, ¶ 13. Perhaps

10

Ms. Conyers would have thwarted him even if he made a good faith effort to use the process.[3] But he did not, and he cannot blame her for that choice.

Because any reasonable factfinder would find based on the evidence presented that Mr. Peacher failed to exhaust available administrative remedies as to any claim, the defendants' motion for summary judgment, dkt. [51], is **granted**.

### IV. Motions for Sanctions

Mr. Peacher's first motion for sanctions asserts that defense counsel violated Federal Rule of Civil Procedure 11(b) by raising an exhaustion defense without first performing a reasonable investigation. Dkt. 47, ¶¶ 9−11. But the exhaustion defense has proven meritorious, and Mr. Peacher presents no evidence that defense counsel failed to investigate before asserting it. This motion for sanctions, dkt. [47], is therefore **denied**.

Mr. Peacher's second motion for sanctions asserts that the defendants "submitted false documents to [the] court in an act of bad faith or ignorance, both of which are bad." Dkt. 57, ¶ 5. The false document he refers to is the September 14 grievance return form signed by Ms. Conyers. But the defendants have credibly explained that this document is in fact a copy of the return form Ms. Conyers issued when returning Mr. Peacher's food service grievance. Dkt. 58 at 4−5. The defendants' explanation fully accounts for the handling of all three grievances Mr. Peacher submitted on August 23, 2021. *Id.* Mr. Peacher's accusation, in contrast, does not address the grievance return for the grievance he filed complaining about deprivation of religious materials. Mr. Peacher's second motion for sanctions, dkt. [57], is therefore **denied**.

---

[3] Mr. Peacher's accusation is undermined by Ms. Conyers's note on the return form for the food service grievance: "This issue has since been addressed and staff now know about the medical orders." Dkt. 51-7 at 1.

### V. Other Pending Motions

Mr. Peacher's motion for preliminary injunction, dkt. [35], his motion for reconsideration regarding an order denying a prior motion for preliminary injunction, dkt. [39], his motion for ruling on motion for preliminary injunction, dkt. [59], his motion for extension of time to file a surreply, dkt. [62], his motion to withdraw the motion for extension of time to file a surreply, dkt. [63], and his motion for ruling on issue of exhaustion, dkt. [66], are all **denied** as moot.

### VI. Conclusion

The defendants' motion for summary judgment, dkt. [51], is **granted**. This action is **dismissed without prejudice**.

Mr. Peacher's motion for preliminary injunction, dkt. [35], motion for reconsideration regarding an order denying a prior motion for preliminary injunction, dkt. [39], motions for sanctions, dkt. [47] and [57], motion for ruling on motion for preliminary injunction, dkt. [59], motion for extension of time to file a surreply, dkt. [62], motion to withdraw the motion for extension of time to file a surreply, dkt. [63], and motion for ruling on issue of exhaustion, dkt. [66], are all **denied**.

All claims proceeding in this action have been resolved. Final judgment shall now enter.

**IT IS SO ORDERED.**

Date: 4/5/2022

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

R. PEACHER
881627
PENDLETON - CF
PENDLETON CORRECTIONAL FACILITY
Electronic Service Participant – Court Only


Matthew Jacob Goldsmith
INDIANA ATTORNEY GENERAL
matthew.goldsmith@atg.in.gov